*E-FILED 1/29/07*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

VISTO CORPORATION,

    Plaintiff,

  v.

SMARTNER INFORMATION SYSTEMS, LTD.,

    Defendant.

NO. 06-80339 MISC RMW (RS)
NO. 06-80352 MISC RMW (RS)

**ORDER RE SUBPOENAS**

## I. INTRODUCTION

These miscellaneous actions were initiated by Smartner Information Systems, Ltd. to enforce third-party subpoenas it caused to be issued and served in this District in connection with several related suits presently pending before the Honorable John Ward in the Eastern District of Texas. Case No. 06-80339 MISC RMW (RS) began as a motion to compel compliance with a subpoena issued to Draper Fisher Jurvetson Management Company V, LLC. ("Draper Five"). Case No. 06-80352 MISC RMW (RS) began as a motion to compel compliance with a subpoena issued to Meritech Capital Associate II, LLC. ("Meritech"). Draper Five and Meritech have opposed the motions to compel brought against them in the respective cases. In addition, Visto Corporation has filed a motion to quash and for a protective order as to *both* subpoenas under the '339 case number.[1]

---

[1] Draper Five and Meritech each erroneously state that they have moved to quash the subpoenas. The motion to quash was filed only by Visto. The same counsel, however, represents all three parties, and there appear to be no procedural or substantive consequences flowing from the fact that only Visto was identified as the moving party in the motion to quash. Indeed, under Rule 45 of

1

1 As the two cases have been related and referred to the undersigned, there is no apparent impediment
2 to deciding both the motions to compel and the motion to quash without regard to any technicalities
3 as to whether issues related to Meritech would otherwise properly be considered under the '339 case
4 number.[2]

The motions were heard on January 17, 2007.  Based on briefs and arguments of counsel, and the record herein, the motions to compel will be denied.  The motion to quash will be granted insofar as compliance with the subpoenas will not be compelled, but Visto's request for a protective order against the issuance of future subpoenas will be denied.

## II. BACKGROUND

Visto holds patents in the field of wireless messaging and synchronization technology.  Visto has charged Smartner or Smartner's "parent company," Seven Networks, Inc. with patent infringement in three separate lawsuits pending in the Eastern District of Texas.[3]  After the present motions to compel were filed,  Judge Ward entered a judgment on a jury verdict in Visto's favor and against Seven in one of those actions.  The subpoenas in dispute here were issued in connection with the other two actions pending before Judge Ward.

Smartner contends that Visto has never been profitable selling its own products, but that it has continued to receive funding from venture capitalists based, at least in part, on a perception that it may be successful in pursuing patent infringement claims against others.  In or around September of 2006, Visto secured a "new round" of funding from various venture capital firms in the amount of $51 million.

---

the Federal Rules of Civil Procedure, it is only a party that *must* file a motion to quash–third parties ordinarily may stand on timely-served objections. Fed. R. Civ. P. 45 (c) (2) (B).

[2] Three other miscellaneous cases were opened and have been related to these matters, each involving a third party subpoena served on counsel for Visto. See Case Nos. 06-80308 MISC. RMW (RS), 06-80312 MISC. RMW (RS), and 06-80308 MISC. RMW (RS)  By prior order, the Court has deferred hearing or ruling on those matters pending Judge Ward's consideration of a related motion for protective order filed in the Eastern District of Texas.

[3] Smartner contends that, contrary to assertions in the oppositions, it is not a "wholly-owned subsidiary" of Seven, and that Seven is merely a majority shareholder.

1   The subpoenas in dispute were issued to two venture capital firms that Smartner understood
2 to have participated in the September 2006 funding of Visto.  Each subpoena seeks (1) all documents
3 referring or relating to the entity's contribution to the funding, and (2) all documents referring or
4 relating to the entity's "decision to contribute [to] and/or participate in" the funding.

## III. DISCUSSION

### A. Draper Five Subpoena

Smartner served the subpoena on Draper Five in apparent good faith and based on a reasonable belief that Draper Five was one of the venture capital firms participating in the funding. In fact, Draper Five represents that it is a management company that does not directly make venture capital investments at all.  Instead, Draper Five purports to serve as the general partner of a limited partnership that *does* make venture capital investments–namely Draper Fisher Jurvetson Fund V, LLP ("Draper *Fund* Five").  Moreover, Draper *Fund* Five did not participate in the September 2006 funding of Visto either.  Rather, it now appears the entity that participated in the funding was Draper Fisher Jurvetson Fund VI, L.P. ("Draper *Fund* Six") at the direction of *its* general partner, Draper Fisher Jurvetson Management Co. VI, LLC. ("Draper Six").

Visto served objections to the Draper Five subpoena on November 6, 2006, the date that objections from Draper Five itself would have been due.  Shortly thereafter, Draper Five apparently retained Visto's counsel, Manatt, Phelps & Phillips, L.L.P., to represent it in these proceedings as well.  Draper Five's own objections to the subpoena were served on November 13, 2006.  Neither the Visto objections nor the Draper Five objections mentioned the fact that neither Draper Five nor Draper *Fund* Five had actually participated in the funding.

Sometime thereafter, however, attorneys at the Manatt firm apparently recognized that Smartner had subpoenaed the wrong Draper entity, and so advised Smartner.  Manatt offered to accept service on behalf of Draper *Fund* Six, the entity that actually participated in the funding. Although Smartner declined the offer and refused to withdraw this motion, Smartner has subsequently served an identical subpoena on Draper *Fund* Six, "to obviate this issue."

As a general rule, the Court will not elevate form over substance.  If the issue were only

3

whether service on Draper Five (a general partner of a venture capital fund) was sufficient to reach documents regarding the activities of Draper *Fund* Five, enforcement of the subpoena as drafted and served might be appropriate. As Smartner points out, the subpoena defines "Draper Fisher Jurvetson Management" and "You" to include "Draper Fisher Jurvetson Management Company V, LLC and its predecessors, as well as any successors, partnerships, affiliates, parents, subsidiaries or divisions thereof." Nevertheless, the law permits persons to create entities that each possess *separate* legal existence, rights, and obligations, even where such entities operate from a common address, have common or overlapping ownership, and bear similar names. Although Draper Five and Draper *Fund* Six might be considered "affiliates" in the loosest lay sense of the term, Smartner has not shown a legal or factual basis to disregard their separate identities. Thus, service of the subpoena on Draper Five was insufficient to reach any documents that might exist regarding the participation of Draper *Fund* Six in the funding.

Furthermore, it appears that Smartner's primary interest in pursuing enforcement of this subpoena, as opposed to the one it subsequently served on Draper *Fund* Six, lies in preserving the technical argument that all objections to the subpoena were waived by Draper Five's failure to serve timely objections. Draper Five and Visto argue that, under the circumstances here, the Court would have discretion to consider the objections notwithstanding the fact that the objections were not timely. Even without reaching that argument, though, it would be manifestly unjust to give Smartner the benefit of an argument that objections were technically waived without holding it to the requirement of issuing the subpoena to the technically correct entity.[4]

All this said, the Court expects counsel to apply the rulings in this order where applicable to future disputes. Thus, to the extent that any future dispute regarding compliance with the subpoena issued to Draper *Fund* Six implicates *either* the rulings in this section of this order *or* in the following discussion regarding the subpoena served on Meritech, the parties should attempt to

---

[4] Because Draper Five apparently is not the entity that participated in the funding, it need not rely on either objections or a motion to quash to avoid the subpoena. Rather, no responsive documents exist, as it has already stated. Documents regarding Draper *Fund* Six's participation in the funding are outside the scope of this subpoena, rendering it unnecessary to consider whether any such documents could be considered within the "possession, custody, or control" of Draper Five.

4

resolve such disputes with reference to this order before filing any further motions.

B. <u>Meritech Subpoena</u>

There is no dispute that Meritech timely served objections to the subpoena. Meritech's objection to producing documents is two-fold. It contends that: (1) Smartner can obtain and has in fact obtained all *relevant* responsive documents directly from Visto, and (2) any responsive documents in Meritech's sole possession–such as documents reflecting its own analysis leading to its decision to invest in Visto–are *not* relevant or subject to production.

Smartner, in turn, argues that a third-party is not immunized from being required to produce documents simply by arguing that a party may have the same documents. It is certainly true that, in appropriate circumstances, production from a third party will be compelled in the face of an argument that the "same" documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions. In the present case, it is not entirely clear whether or not Smartner is contending that production from Meritech is necessary as a means for verifying the completeness or accuracy of the material produced by Visto. While it appears Smartner is unwilling to accept as a *certainty* that Visto's production is complete, its main focus in pursuing this motion is to obtain materials that Visto could not be expected to have ever possessed, such as internal analyses conducted by Meritech.

Notwithstanding its reluctance to concede that production from Meritech is not necessary as a "check" on Visto's production, Smartner's reply brief appears to acknowledge that Visto has now produced all of the documents that it "made available to investors" in connection with the September 2006 funding. Smartner, of course, also had the right to seek relief from Judge Ward through a motion to compel against Visto if any questions remained in that regard. Accordingly, Smartner has not shown that Meritech should be compelled to produce any responsive documents in its files merely as a means of verifying that Visto produced all of the documents it could have been expected to possess.

The crux of the present dispute, however, lies in whether Smartner is entitled to documents

5

that indisputably were never in Visto's possession–e.g., any documents Meritech may have produced *internally*, regarding its own analysis of Visto and its ultimate decision to participate in the funding.[5]

Meritech contends that any such documents that may exist are simply not relevant to the issues in the underlying suits.

"Relevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir.1998). Absent additional factors such as burdens of production or privacy interests, an argument based on an asserted lack of relevance of the materials sought will rarely be sufficient to preclude production. Here, Meritech has made no particularized showing that it would be unduly burdensome to produce documents that, by definition, were generated and maintained in connection with one specific transaction over what likely was a relatively short period of time. There is every reason to believe that, however voluminous, the responsive documents are maintained in a file or group of files that are easily accessible to Meritech.

Meritech does have legitimate privacy and competitive business interests in the specifics of how it goes about making investment decisions. Although the availability of a protective order most often precludes a *party* from relying on such interests to avoid production of relevant information, Meritech is *not* a party and it is somewhat less reasonable to require it to disclose its confidential information even under such protections.

Ultimately, though, it is simply not enough to say that requiring production of certain categories of documents would not be unduly burdensome or that privacy interests can be addressed through a protective order. The touchstone of discovery remains relevance, however broadly that term may be construed. In this instance, Smartner insists that the information it seeks is "relevant" both to the issue of "commercial success" and to "reasonable royalty."[6] Smartner fails to explain

---

[5] Smartner's contention that Meritech's opposition "fails to address" such documents is mistaken. Meritech explains its position that any such documents are not *relevant* and that they would contain proprietary, trade-secret, information as to its investment strategies.

[6] "Commercial success" is one factor that *Visto* could seek to establish in rebuttal to a contention that the patents are invalid on grounds of obviousness. Visto points out that Judge Ward has already rejected the invalidity contentions in the action in which judgment has been entered. Smartner responds that Judge Ward also declined to consider that case as having a *res judicata* or

6

how or why discovery into a venture capital firm's internal investment analyses is "reasonably calculated to lead to the discovery of admissible evidence" on either point.  What might be relevant is the *actual* "commercial success" that Visto has enjoyed (or not enjoyed), as well as the *actual* data on other factors that may be considered when calculating a "reasonable royalty."  The documents Smartner is seeking conceivably reflect a venture capital firm's *opinions* about and *analysis* of such information, but there is no reason to believe that Meritech possesses any such information not publicly available or available in the documents produced by Visto, or that Meritech's opinions and analysis are independently relevant.

Put differently, it is reasonable to assume that in making its decision to invest in Visto, Meritech's analysts may well have looked at and considered the very same types of information and data that a trier of fact–or the parties's respective expert witnesses–would consider when evaluating commercial success or a reasonable royalty.  But there is nothing in the record to suggest that Meritech had data or documents not available from Visto or from public sources.  Smartner's bare assertion that the thought processes of Meritech's analysts and the private conclusions they drew are "clearly relevant" does not make that so.  Accordingly, the motion to compel compliance with the Meritech subpoena is denied.

C. <u>Motion to Quash or for a Protective Order</u>

To the extent that Visto's motion to quash or for a protective order seeks relief that neither Draper Five nor Meritech be required to respond to the subpoenas, the motion is granted, for the reasons set forth above.  Visto also requests that Smartner be precluded from serving any additional subpoena on any other third party that is substantially similar.   The Court declines to rule in advance as to the propriety of any as-yet-unserved subpoena, particularly given that subpoenas may be contemplated that would be subject to enforcement in another District.  Again, however, the

---

collateral estoppel effect during a *Markman* hearing in one of the actions still pending. Whether or not Visto ultimately may persuade Judge Ward to apply *res judicata* or collateral estoppel, at this point Smartner's invalidity defenses are still part of the underlying cases and an appropriate topic of discovery in general.  Furthermore, "commercial success" is also one factor that may be considered in a "reasonable royalty" analysis. *Georgia-Pacific Corp. v. U. S. Plywood Corp.* 318 F.Supp. 1116, 1120 (D.C.N.Y. 1970).

7

Court expects counsel to be able to apply the principles of the rulings in this order when and if any legally and factually indistinguishable circumstances may arise.[7]

IT IS SO ORDERED.

Dated: January 29, 2007

RICHARD SEEBORG
United States Magistrate Judge

---

[7] At the hearing, Smartner suggested that there are disputes pending regarding other subpoenas issued in this District, but that it believes the parties will agree to present those matters to Judge Ward in the Eastern District of Texas.  In the event it becomes necessary within the next six months for any party to seek further relief in this district in any matter that would be considered "related" to these actions, the parties are hereby authorized and instructed to do so by motion filed in either of these cases, rather than by initiating a new miscellaneous matter.  Although proceeding in such a manner is not usual, it does not appear that it would violate any rule to do so, and it will be more convenient both for the Court and for the parties.

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Henry C. Bunsow     bunsowh@howrey.com, lim@howrey.com

Korula T. Cherian     cheriank@howrey.com, perezl@howrey.com

Robert E. McAlhany , Jr     mcalhanyr@howrey.com, gibbst@howrey.com

James Charles Pistorino     PistorinoJ@howrey.com, HockinL@howrey.com; ; GibbsT@howrey.com; ; McAlhanyR@howrey.com

James F. Valentine     valentinej@howrey.com, hockinl@howrey.com

Christopher L. Wanger     cwanger@manatt.com, tmartin@manatt.com; dwishon@manatt.com; lvete@manatt.com; KHunt@manatt.com; SSareth@manatt.com; AScardina@manatt.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 1/29/07**                                                                **Chambers of Judge Richard Seeborg**

                                                                                                **By:      /s/ BAK**